1
2
3
4
5
6
7

8

**UNITED STATES DISTRICT COURT**

9

**EASTERN DISTRICT OF CALIFORNIA**

10

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No.: 1:23-cr-00174 JLT SKO |
| Plaintiff, | ORDER DENYING MOTION TO DISMISS (Doc. 20) |
| v. | |
| OMAR TORRES-RANGEL, | |
| Defendant. | |

The government alleges Mr. Torres-Rangel is in the country illegally after having been "excluded, deported and removed" from the United States on three occasions and convicted of "False imprisonment with violence in violation of California Penal Code Section 23." (Doc.15) He is charged with a violation of 8 U.S.C. § 1326(a), (b)(1).

In his current motion, Mr. Torres-Rangel seeks to dismiss the indictment, asserting that the underlying removal order was invalid. The Court finds that Mr. Torres-Rangel is not permitted to challenge the removal order in this action. Consequently, the motion to dismiss is **DENIED**.

**I.    Background**

In 2008, Mr. Torres-Rangel was charged in state court with second-degree robbery for taking personal property from another "by means of force or fear" (Cal. Pen. 212.5(c); Cal. Pen. Code 11192.7(c)(19)), intimidation of a victim to prevent her from making a police report (Cal. Pen. Code § 136.1(b)(1)), violation of a court order (Cal. Pen. 273.6(A)), battery (Cal. Pen Code § 243(e)). (Doc.

1

20-2 at 1) At the hearing on his change of plea, the parties agreed that he would plead guilty to the battery charge and to false imprisonment as a felony (Cal. Pen. Code § 236, 237), which was added orally as a fifth count[1] and the remaining charges would be dismissed. (Doc. 20-2 at 5) The parties stipulated "to a factual basis for the plea based on the offense report, criminal complaint." *Id.* at 6-7. The Court sentenced him to the mid-term of two years and, though he was initially granted probation, in 2009, he was returned to custody to serve the ordered sentence. (Doc. 20 at 10) The Abstract of Judgment indicates the crime at issue was "False Imprisonment with Violence/Etc.," it cites California Penal Code section 236 and indicates it is a felony conviction.

Having been brought to the country as a baby, Mr. Torres-Rangel has no legal status in this country. (Doc. 20 at 8) Thus, after completing his prison term for his convictions, Mr. Torres-Rangel was administratively removed and returned to his home-country of Mexico on October 27, 2009. (Doc. 20-2 at 17-19) Mr. Torres-Rangel again returned to the country unlawfully and was found here on August 18, 2011. (Doc. 20-2 at 20). He was returned to Mexico on June 22, 2012 (*Id.* at 22). He returned to the U.S. in September 2012 and was returned to Mexico on July 3, 2014 (*Id.* at 25-26). Again, he returned to the U.S. on August 12, 2014, and was removed on December 7, 2017 (*Id.* at 27-29). Each time, Mr. Torres-Rangel pleaded guilty to a charge brought under 8 U.S.C. § 1326 and on at least one occasion, admitted that he had been convicted of false imprisonment with violence. (Doc. 20 at 12-15; Doc. 25-1 at 21)

After being found in this country again on March 8, 2023, the government indicted Mr. Torres-Rangel and charged him with a violation of 8 U.S.C. § 1326(a), (b)(1). (Doc. 15) The indictment charges that Mr. Torres-Rangel,

> is an alien, and that on or about October 27, 2009, July 3, 2014, and December 7, 2017, he was excluded, deported, and removed from the United States after being convicted of one or more crimes punishable by a term of imprisonment exceeding one year, including:
>
> > False imprisonment with violence in violation of California Penal Code Section 236, on or about February 28, 2008, in Kern County, State and Eastern District of California, in Kern County Superior Court case number BF 122102A.

---

[1] Mr. Torres-Rangel also admitted that he was in violation of the terms of his probation in another case. (Doc. 20-2 at 8)

2

Thereafter, on or about March 8, 2023, the defendant was found back in Kem County, State and Eastern District of California, after knowingly and voluntarily reentering and remaining in the United States, without having obtained the consent of the Attorney General of the United States or the Secretary of the Department of Homeland Security to reapply for admission into the country. The defendant was not under constant, continuous observation by a United States officer from the time that he crossed the border until the time he was apprehended. This was all in violation of Title 8, United States Code, Section 1326(a) and (b)(l).

*Id.*

In this motion to dismiss the indictment, Mr. Torres-Rangel asserts that the administrative order of removal issued in 2009, was invalid because the felony conviction at issue does not definitively demonstrate that it was a violent felony such to constitute an "aggravated felony" as set forth in 8 U.S.C. § 1101(43)(F). Based on this argument, he argues that he was not removable under 8 U.S.C. § 1227(a)(2)(A)(iii).  Consequently, Mr. Torres-Rangel argues the Court should dismiss the indictment.

**II.    Analysis**

**A.    Title 8 United States Code § 1326 prohibits collateral attack of the underlying removal order, except in limited circumstances.**

Subdivision (d) of 8 U.S.C. § 1326 allows the defendant to lodge a collateral attack on his removal order in limited circumstances. This subdivision allows such an attack only when the defendant demonstrates:

(1) the alien exhausted any administrative remedies that may have been available to seek relief against the order;

(2) the deportation proceedings at which the order was issued improperly deprived the alien of the opportunity for judicial review; and

(3) the entry of the order was fundamentally unfair.

None of these conditions may be waived and the defendant bears the burden of demonstrating he has satisfied each before he may collaterally attack the underlying removal order. *United States v. Palomar-Santiago*, 593 U.S. -----, 141 S. Ct. 1615, 1622 (2021). "[E]ach of the statutory requirements of § 1326(d) is mandatory." *Id.*

**i.    Mr. Torres-Rangel has not demonstrated he has exhausted the administrative remedies.**

Mr. Torres-Rangel asserts, in essence, that he is relieved of the requirement of exhausting his

administrative remedies because there were no such remedies available. (Doc. 20 at 20) He argues that "administrative review in the context of an administrative removal is limited to *factual* matters" rather the legal questions and, he contends, the classification of his felony conviction was a question of law, not fact. *Id*. The Court disagrees.

First, whether he pleaded guilty to and was convicted of false imprisonment using violence is a factual question. On the form presented to him by the immigration officer, was the option to challenge that he "was not convicted of the criminal offense described" in the allegation of the "Notice of Intent to Issue Final Administrative Removal Order." (Doc. 20-2 at 15) Though he does not contest that he was convicted of false imprisonment as prohibited by California Penal Code section 236 and punishable as a felony under section 237, he was entitled to contest that he committed the act with violence[2] and whether the criminal court ever found that he did. These are *factual* issues not legal conclusions. Once these factual questions were answered, then the question of whether that conviction made him removable, was a legal one. Consequently, the Court rejects that there was no administrative remedy available to him and finds he has failed to demonstrate he exhausted his administrative remedies.

## ii.   Mr. Torres-Rangel has not demonstrated that entry of the removal order was fundamentally unfair

The Court agrees with the parties that Mr. Torres-Rangel's 2008 conviction for felony false imprisonment under California Penal Code section 236 and 237, is not a categorical match for an aggravated felony under federal law. However, the Court finds that the statutes at issue are divisible— in that they comprise multiple, alternative versions of the crime. (*Descamps v. United States*, 570 U.S. 254, 262 (2013). Indeed, California Penal Code section 237 makes false imprisonment under section 236 a felony, if it is accomplished "by violence, menace[3], fraud, or deceit." Consequently, the Court takes the modified categorical approach to consider whether the 2008 conviction constitutes an

---

[2] Mr. Torres-Rangel describes the event, from which the conviction stems, as "an argument." (Doc. 20-1 at 2)
[3] California law includes "menace" as a threat of harm with or without the display of a deadly weapon. *People v. Matian*, 35 Cal. App. 4th 480, 485 (1995); A "crime of violence" under federal law includes those crime which include as an element the use of violence or the threatened use of violence. 18 U.S.C. § 16. Thus, the Court concludes that a false imprisonment accomplished by menace would constitute an aggravated felony under 8 U.S.C. § 1101(M)(43)(F).

aggravated felony under federal law. *United States v. Hernandez-Hernandez*, 431 F.3d 1212, 1217 (9th Cir. 2005).

The modified categorical approach allows the Court to consider a limited set of documents to make this evaluation. *Shepard v. United States*, 544 U.S. 13, 25 (2005). For example, the Court may consider such documents as the judgment, charging document, the plea colloquy, the minute order from the change-of-plea hearing, the plea agreement, the factual basis for the plea. *Id*. The Court may also consider the police report when it is incorporated by reference in the charging document or when the defendant stipulates that the police report constitutes the factual basis for the plea. *United States v. Espinoza-Cano*, 456 F.3d 1126, 1132 (9th Cir. 2006); *U.S. v. Alamazan-Becerra*, 537 F.3d 1094, 1099 (9th Cir. 2008); *United States v. Fulgham*, 2023 WL 334014, at *2 (9th Cir. Jan. 20, 2023).

In *Hernandez-Hernandez*, the defendant filed a motion to set aside his felony conviction for false imprisonment under California law. 431 F.3d at 1218. In the motion, the defendant stipulated to the facts that gave rise to the conviction. *Id.* The Court relied upon this stipulation to determine the conviction involved the use of violence. "Hernandez–Hernandez admitted to a particular set of facts that clearly involve violence and the use of force. He positioned his truck to block the path of his victims' van, attempted to pry open the van's door, grabbed one of the victims and attempted to extract her forcibly from the van, and then yanked the wires under the dashboard to disable the victims' vehicle. Finally, he threatened to kill the occupants if they refused to turn over one of the women in the van. This stipulation does not describe activities of fraud or deceit; it describes acts of violence. The conclusion is inescapable that, by stipulating to this testimony as the factual basis for his guilty plea, Hernandez–Hernandez necessarily was convicted of a crime committed by violent means, and not by the other methods set forth in the charging document and statute." *Id*.  The Court continued, "We note that the stipulation to the means Hernandez–Hernandez used to accomplish the false imprisonment was necessary to his plea. See FED. R. CRIM. P. 11(b)(3). As a result, because Hernandez–Hernandez was convicted of committing false imprisonment by violence, menace, fraud or deceit, and the factual basis only described violent means, we can conclude that he was convicted of committing the crime through violence." *Id*. at 1218, n. 7.

The Ninth Circuit affirmed this approach in *United States v. Espinoza-Cano*, 456 F.3d 1126,

1132 (9th Cir. 2006). In *Espinoza-Cano*[4], the defendant was charged with grand theft. *Id*. at 1129. The police report was attached to the complaint and was incorporated by reference as the statement of probable cause. *Id*. At the change of plea hearing, the attorneys stipulated that the police report set forth the factual basis for the defendant's plea. *Id*. Later, when the defendant was convicted of violating 8 U.S.C. 1326, he challenged whether his underlying offense constituted an aggravated felony. The sentencing court relied upon the police report detailing the grand theft and determined that the offense was an aggravated felony. The Ninth Circuit agreed with this approach.

> In this case, the police report falls squarely into the category of documents that are proper for judicial consideration as articulated by *Taylor* and *Shepard*. Here, the police report was incorporated by reference into the charging document, a formal complaint, thereby becoming part of the complaint and narrowing the factual basis for the charge. In addition, Espinoza-Cano, through counsel, admitted in open court that the facts in the police report constituted the factual basis underlying his guilty plea.[Footnote] This admission was the functional equivalent of what occurred in *United States v. Hernandez-Hernandez*, 431 F.3d 1212 (9th Cir.2005), in which we held that a defendant's assent to the statement of facts in a motion under California Penal Code § 995 to set aside the indictment or information was a proper basis for a sentencing court to engage in a modified categorical analysis. *Id*. at 1218. For the same reason, the police report as it was utilized in the present case became a "mutually agreed-upon statement of facts" within the meaning of *United States v. Almazan-Becerra*, No. 05-10056, 456 F.3d 949 (9th Cir.2006). [Footnote] The district court's consideration of the police report did not widen the evidentiary net. Rather, the police report became part and parcel of the complaint and formed the agreed upon factual basis for the plea. Thus, the underlying record of Espinoza-Cano's prior conviction was not expanded beyond that which Taylor and Shepard approved for a modified categorical analysis. Moreover, the manner in which the police report was utilized, to both define the charge and provide the factual basis for Espinoza-Cano's guilty plea, eliminated any need for resolution of evidentiary disputes or judicial fact-finding. See *Hernandez-Hernandez*, 431 F.3d at 1218. Under these circumstances, we hold that it was proper for the district court to consider the police report in determining whether Espinoza-Cano had suffered a prior aggravated felony conviction.

---

[4] Mr. Torres-Range argues that the rationale of *Espinoza-Cano* does not survive *Descamps*. (Doc. 30 at 8) The Court disagrees. In *Descamps*, the defendant was convicted of an offense that was not a categorical match for a violent felony for purposes of the Armed Career Criminal Act. Even though the statute was indivisible— because the offense was broader than the generic offense—the trial court and the Ninth Circuit determined that the modified categorical approach could be used to determine whether the defendant *actually committed* an offense that would constitute a categorical match for the generic offense. *Id*. at 259-260. In rejecting this approach, *Descamps* reiterated that "the modified approach serves a limited function: It helps effectuate the categorical analysis when a divisible statute, listing potential offense elements in the alternative, renders opaque which element played a part in the defendant's conviction. So understood, the modified approach cannot convert Descamps' conviction under § 459 into an ACCA predicate, because that state law defines burglary not alternatively, but only more broadly than the generic offense." *Id*. at 260. Descamps had no occasion to consider whether, when confronted with a divisible statute, a court may consider a police report that was stipulated by the defendant to constitute the factual basis for his plea. The Ninth Circuit's recent holding in *United States v. Fulgham*, 2023 WL 334014 (9th Cir. Jan. 20, 2023), is in accord.

*Id*. at 1132-1133.

As noted above, the false imprisonment charge at issue was convicted was added orally at the change of plea hearing, so it was not included in the complaint. After the court allowed the amendment, the court asked counsel whether the "parties stipulate to a factual basis for the plea based on the offense report, criminal complaint?" (Doc. 20-1 at 6-7.) Mr. Torres-Rangel stipulated through his attorney. *Id*. at 7. The court then found that based on these documents, there was "factual basis for the plea based on that stipulation." *Id*.

Despite that the complaint did not include the false imprisonment charge, it details conduct that involves violence or menace and no acts that constitute deceit or fraud. (Doc. 20-2 at 1-2) In Count 1, the government alleged that the defendant committed robbery in that he "did willfully and unlawfully take personal property" from the victim "by means of force or fear," which constituted a "serious felony within the meaning of Penal Code section 1192.7(c)(19). Count 4 alleges the defendant "did willfully and unlawfully commit battery" on the victim. *Id*. at 2. Notably, an element of the felony offense of false imprisonment is whether the act occurred through the use of violence, menace, deceit or fraud. *People v. Haney*, 75 Cal.App.3d 308, 312–313 (1977), Cal. Pen. Code § 237; CALCRIM 1240. With this in mind, the police report reads:

> Gonzales told me Omar Torres demanded to take Aanney Torres into his custody. Gonzales advised she refused to release Aanney Torres to Omar Torres at which time he grabbed both of her arms with his hands and began to push her into a large helium tank. Gonzales said, "He slammed me into the helium tank a bunch of times!"
>
> Gonzales said she grabbed the cordless telephone and advised Omar Torres she was calling the police at which time he forcibly removed it from her hands not allowing her to telephone police. Gonzales stated, "He threw the phone on the ground!" Gonzales said moments later, she grabbed the phone from the floor and attempted to call police; however, Omar Torres again forcibly grabbed the phone from her hand and maintained it in his possession not allowing her to contact police.
>
> Gonzales advised Omar Torres then removed currency from the store before he fled on foot. For further on the strong armed robbery, refer to my initial offense report bearing case #08-18676.
>
> Gonzales said she attempted to remove the currency from Omar Torres as he exited the business at which time his hand stuck her in her face just below her left eye as he pushed her away. Gonzales said Omar Torres pulled her hair prior to fleeing.

(Doc. 29 at 4-5) None of conduct described could constitute deceit or fraud—the non-violent forms of the crime. Thus, in considering the document which made up the factual basis for the plea, the

7

1  complaint and the judgment, the Court finds that Mr. Torres-Rangel was convicted of false

2  imprisonment accomplished using violence. Simply stated, no other conclusion is supported by these

3  documents and, most notably, there is no way the conviction could be based on acts of fraud or deceit.

4  Consequently, the Court finds that the removal order was not fundamentally unfair.

5  **III.      Conclusion**

6          Mr. Torres-Rangel has not demonstrated either that he exhausted his administrative remedies

7  or that his removal order was fundamentally unfair. Consequently, he is not entitled to challenge the

8  underlying conviction in this action. 8 U.S.C. § 1326(d).

9                                        **ORDER**

10         Based upon the foregoing the Court **ORDERS**:

11         1.       The motion to dismiss (Doc. 20) is **DENIED**.

12         2.       The Court sets a further status conference before Judge Oberto on November 15 at 1:00

13  p.m.[5]

14

15  IT IS SO ORDERED.

16     Dated:    **November 8, 2023**

                                            UNITED STATES DISTRICT JUDGE

17

18

19

20

21

22

23

24

25

26

27

28

[5] The parties may stipulate, with an adequate time exclusion, to a different date for a status conference or other proceeding.

8